Hallows, J.
Each interpleaded defendant claims that the undisputed facts relieve it of any legal liability for the explosions and, therefore, its motion to dismiss the cross complaint summarily should have been granted. For the sake of clarity we will consider each appeal separately.
The facts common to both appeals, however, are as follows : The defendant, Madison Gas & Electric Company, for some fifty years has been distributing gas in the city of Madison. About 1949 it changed over from distributing manufactured to natural gas, which it purchases from a pipeline company. In this change-over it was necessary to design or redesign its system of gas distribution so that the high pressure of the natural gas could be reduced from pipeline pressure to low distribution pressure. The Madison Gas & Electric Company hired the interpleaded defendant, Ford, Bacon & Davis, Incorporated, as agent under the supervision of the defendant, Madison Gas & Electric Company, to do the designing of the engineering work in connection with the construction of a feeder line and a pressure-reducing station. In the plans Ford, Bacon & Davis specified certain relief valves and vents which were ultimately installed as part of the distribution system. The defendant, Madison Gas & Electric Company, also purchased and installed certain gas-reducing pressure regulators manufactured by the interpleaded defendant, Rockwell Manufacturing Company.
Natural gas is carried to the Madison utility by pipeline under pressure of 300 to 400 pounds per square inch (p.s.i.) which is normally reduced at the “city gate” station by Rockwell regulators belonging to the Madison Gas & Electric Company to between 110-140 p.s.i., and it is then brought into the city through underground feeder mains to the East Main street pressure house where it is again reduced by Rockwell regulators to between 5 — 20 p.s.i., and then introduced into the general distribution system *242 and conducted through such system by way of pumping mains laid in the streets of Madison. The two regulators in the Main street pressure house were set up in parallel arrangement. On the night of January 4th the regulator in operation in the pressure house developed an unusual and violent vibration and, after some period of time, failed in an open position, allowing the gas to pass into the distribution mains without any reduction in pressure. The relief valves were set to relieve gas pressure in the distribution system somewhat in excess of 20 pounds. After thirty or thirty-five minutes the gas going through the regulator was manually shut off. About that time the explosions occurred some distance away on North Bassett street.
There is considerable evidence that the attendant at the pressure house did not know what to do when the vibration started in the regulator, that he called his immediate supervisor who came to the pressure house. The supervisor called the superintendent by telephone, and the attendant was told to shut off the regulator which he attempted to do by adjusting the top of the pressure regulator. Some minutes later the superintendent arrived at the pressure house and turned the gas off by means of a manual valve in the pipe. However, part of a gas main blew out on North Bassett street.
Various causes of the damages, either singly or in combination, are urged: (1) The regulator failed in an open position; (2) the attendant was incompetent and did not shut off the gas to the regulator; (3) the relief valves and vents were inadequate to reduce the pressure in the distributing mains; (4) the pipe in the distributing main was old and defective.

Appeal of Rockwell.

The cross complaint against Rockwell alleges that the regulator was defective as to its design, construction, and *243 material used, and Rockwell knew or should have known of the defect; that the damages were caused by the negligence of Rockwell, specifying in detail various alleged technical defects. The Madison Gas & Electric Company asked for indemnification or contribution against Rockwell, depending on the facts proved.
Rockwell contends: (1) It was not negligent because it gave warnings as to the danger of failure of the regulator in case of vibration; (2) that the defendant gas utility, having full knowledge of the danger of vibration, failed for some twenty-five minutes to shut off the gas by turning the manual valve, and this act or omission of the defendant gas company was the sole cause of the damage; (3) that satisfactory operation of the regulator for over eight years, with no complete check or maintenance performed, negatives any claim of neglect of the interpleaded defendant manufacturer.
In our opinion the determination of whether the handbook, Exhibit 22, was an adequate warning, or any warning, to the gas company, or whether it was intended as a maintenance procedure, should be reserved for trial. There are questions of fact involving whether or not the gas company ignored the warning, if Exhibit 22 can be considered one. There is some dispute over whether the regulator was properly inspected. The alleged facts sustaining the contention that Rockwell’s negligence, if any, was not the cause of the plaintiff’s damage are questioned. There is considerable technical material and affidavits on these points.
Rockwell is of the opinion and strenuously argues that this court should decide these questions of fact or at least decide that they are undisputed or sufficient to sustain various propositions of law which would completely exempt it from any negligence. The question on this motion is whether the Madison Gas & Electric Company has shown, by affidavits and other proof, facts which are deemed sufficient to entitle it to go to trial on its cross complaint against *244 Rockwell. For this court to attempt to decide the merits of the various questions raised on this appeal would amount to deciding the case on affidavits and adverse examinations.
As has been said many times by this court, the inquiry on summary judgment is not to decide the questions of fact raised by the affidavits and other proof, but to decide whether such questions exist and should be submitted to the trier of the facts. The proof of the interpleaded defendant does not present facts conclusively showing that the cross complaint of the gas company has no merit and cannot be maintained. Bryan v. Noble (1958), 5 Wis. (2d) 48, 92 N. W. (2d) 226. The law applicable to granting or denying summary judgment has been stated many times by this court. In Voysey v. Labisky (1960), 10 Wis. (2d) 274, 277, 103 N. W. (2d) 9, we stated:
“The rule is well established in this state that when it is shown there is a substantial issue of fact, or when the evidence on a material issue is in conflict, or if the inferences to be drawn from credible evidence are doubtful and uncertain, the motion for summary judgment should be denied. Likewise, when there is credible evidence which under any reasonable view will either support or admit of an inference in support or in denial of a claim of either party, it is for the jury to draw the proper inference and not for the court to determine which of two or more permissible inferences should prevail. Elder v. Sage (1950), 257 Wis. 214, 42 N. W. (2d) 919. We have often said that the power of the courts under the summary-judgment statute (sec. 270.635, 33 W. S. A., p. 309) is drastic and should be exercised only when it is plain that there is no substantial issue of fact or of permissible inference from undisputed facts to be tried. De Bonville v. Travelers Ins. Co. (1959), 7 Wis. (2d) 255, 96 N. W. (2d) 509, 97 N. W. (2d) 392; Ondrejka v. Ondrejka (1958), 4 Wis. (2d) 277, 90 N. W. (2d) 615; Braun v. Jewett (1957), 1 Wis. (2d) 531, 85 N. W. (2d) 364; Udovc v. Ross (1954), 267 Wis. 182, 64 N. W. (2d) 747, 66 N. W. (2d) 200.”
*245 To grant this motion would be a trial on affidavits and adverse examinations, an objective not contemplated by summary-judgment procedure. Stafford v. General Supply Co. (1958), 5 Wis. (2d) 137, 92 N. W. (2d) 267.

Ford, Bacon & Davis Appeal.

What has been said concerning the use of the summary judgment in the Rockwell appeal also applies to this appeal. The cross complaint alleges that the interpleaded defendant, Ford, Bacon & Davis, was employed by the Madison Gas & Electric Company to engineer, design, and construct in accordance with good engineering practices a pressure-reducing station with the necessary equipment and facilities for the purpose of reducing the pressure of natural gas in a feeder main from 150 p.s.i. to normal operating pressures of 2 — 25 p.s.i., so that the gas could be safely introduced in the general distribution system of the defendant, the Madison Gas & Electric Company; that the interpleaded defendant did engineer, design, and supervise the construction of a pressure station and, in doing so, had relief valves and vents installed which proved to be inadequate; that the interpleaded defendant, Ford, Bacon & Davis, was negligent in designing and approving the installation of relief valves and vents which were inadequate to prevent overpressurizing of the distribution mains.
The interpleaded defendant, Ford, Bacon & Davis, claims that there is no issue of fact because the precise plans, including the relief valves and vents, were approved as to safety by the public service commission of Wisconsin and, therefore, as a matter of law, such approval negates any negligence or liability on the part of Ford, Bacon & Davis. This defendant also claims that the design of the relief valves and vents complied with the “Interim Gas Safety Rules and Regulations” promulgated in 1952 by the public service com *246 mission. It is also claimed that it cannot be proved that the pressure in the main exceeded the setting of the relief valve and that in any event there were other intervening causes.
There are many other issues raised in the briefs but it is sufficient for the denial of the motion to state that on the question of the approval of the plans, a determination of just what the public service commission approved, and whether the plans met the Interim Gas Safety Rules and Regulations of 1952 or were required to meet such code so far as the liability of its interpleaded defendant is concerned, are questions that should be determined on a trial of the facts. We consider the facts are not clearly enough established for this court to consider and decide the questions of law that are suggested.
A word should be said on the manner and method of the use of the adverse examinations under sec. 270.635, Stats. Affidavits in support of and those in opposition to the motion included verbatim only those portions of various adverse examinations which were believed to be material. Later an affidavit by the Madison Gas & Electric Company incorporated by reference the entire voluminous adverse examinations of eight witnesses. Over the opposition of this interpleaded defendant, Ford, Bacon & Davis, that their reception would be prejudicial because of its inability to make satisfactory answer by counteraffidavits, the court granted the motion of the Madison Gas & Electric Company to make the entire adverse examinations of six witnesses part of the record and granted Ford, Bacon & Davis ten days within which to file counteraffidavits. The court should have denied the motion or should have ordered the Madison Gas & Electric Company to specify the material portions of the adverse examinations for the benefit of opposing counsel and the court.
*247 Incorporating material parts of an adverse examination in an affidavit in support of or in opposition to the motion for summary judgment is a proper method to get such facts before the court and was suggested in Commerce Ins. Co. v. Merrill Gas Co. (1955), 271 Wis. 159, 72 N. W. (2d) 771. In that case we stated that adverse examinations could be used in connection with motions for summary judgment, providing the evidentiary matters from the depositions were stated in the affidavit or were incorporated in whole or relevant part by the proper reference. Recently in Kanios v. Frederick (1960), 10 Wis. (2d) 358, 364, 103 N. W. (2d) 114, we pointed out that the use of depositions on motion for summary judgment should be made as simple as possible. We stated:
“When counsel incorporating the deposition fails to supply a copy to other counsel who did not obtain one, or where the deposition is so voluminous that counsel ought, in fairness, to specify the portions on which he relies, the trial court would have discretion so to order upon proper application.”
It should be noted that the motion to incorporate all the adverse examinations was heard on March 7th last by the trial judge and prior to the Kanios decision which was handed down on May 3d.
After both sides have incorporated what they consider to be the material parts of adverse examinations in their affidavits, the record should not be enlarged and duplicated by the catchall method of “noodling the goose.” While counsel may be thoroughly familiar with the contents of the adverse examinations, the trial court and certainly this court on appeal is hard put and imposed upon to read voluminous adverse examinations in the record to determine the disposition of the motion. In deciding a motion for summary judgment the court first examines the moving papers to *248 see if the moving party has made a prima facie case for granting summary judgment. If he has, the court must then examine the opposing party’s affidavits and other proof to determine whether the facts are shown which the court deems sufficient to entitle the opposing party to a trial.
We suggest as a matter of good practice, where voluminous adverse examinations are used on motion for summary judgment, that the party so using the adverse examinations specify by page number the portions which he deems to be material and on which he relies. Opposing counsel and courts should not have to winnow the record to separate the wheat from the chaff.
By the Court. — Orders appealed from affirmed.